IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Thomas G. Rollins, | Civil Action No. 8:08-2663-HMH-BHH |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, | |
| Defendant. | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Thomas G. Rollins, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 50 years old as of the date he was last insured for disability insurance benefits (DIB), and 52 years old as of the date of the Commissioner's final decision for supplemental security income benefits (SSI). (R. at 55.) He claims he became disabled in January 2004 due to severe back pain. (R. at 14, 55-57, 69, 240-43.) He graduated from high school and has vocational training as an electrician, and worked in the past as an electrician. (R. at 70, 75, 107, 115.) Other relevant medical and personal

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

facts will be recounted only as they relate to the plaintiff's specific objections to the ALJ's decision. As always, the parties' briefs are exhaustive summaries of that evidence.

The plaintiff protectively filed applications for DIB and SSI on August 16, 2004. (R. at 14, 55-57, 240-43.) His applications were denied in initial and reconsidered determinations by both the State agency and the Social Security Administration. (R. at 25-26, 28-33, 35-40, 238-39.) He filed a request for a *de novo* hearing before an Administrative Law Judge (ALJ), which was held on January 25, 2008, at which Plaintiff, his legal counsel and a vocational expert appeared. (R. at 247-284.) In a decision dated April 3, 2008, The ALJ found that Plaintiff was not disabled within the meaning of the Act. (R. 9-24.) As the Appeals Council denied the plaintiff's request for review (R. at 5-7), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2005.
>
> (2) The claimant has not engaged in substantial gainful activity since March 1, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> (3) The claimant has the following severe impairments: degenerative disc disease of the lumbar and cervical spine (20 CFR 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light and sedentary work in jobs that permit the claimant to sit and stand as needed, with no repetitive bending, stooping, squatting, climbing or balancing, no work around hazardous machinery or at unprotected heights, and

due to pain no jobs that require sustained concentration required to perform skilled jobs.

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7) The claimant was born on July 10, 1955, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR. 404.1563 and 416.963).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR. 404.1564 and 416.964.

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41and 20 CFR Part 404, Subpart P, Appendix 3).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR. 404.1560(c), 404.1566, 416.960(c) and 416.966).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2004, through the date of this decision (20 CFR. 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the

4

Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to give controlling weight to the opinions of his treating physicians; (2) failing to properly consider the plaintiff's residual functional capacity; (3) failing to properly analyze the plaintiff's credibility; and (4) failing to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles description of certain jobs. The Court will address each in turn.

**I.   Treating Physician**

The plaintiff first contends that the ALJ failed to give the opinion of his treating physicians, Drs. William L. Lehman and Dr. Samuel Stone controlling authority. Dr. Lehman stated that he had last seen the plaintiff on March 1, 2005 and based on his general treatment of the plaintiff, as well as that visit, specifically, opined twice in a letter of December 21, 2007, that the plaintiff was disabled. (R. at 197-98.) In addition, the plaintiff's longtime family physician, Dr. Samuel Stone, stated on August 22, 2006, that the

5

plaintiff suffered from cervical disc displacement, back pain, depression, and osteoarthritis and was unable to work as a result. (R. at 210.)

The ALJ discounted Dr. Lehman's opinion because (1) it was largely based on the subjective complaints of the plaintiff as opposed to positive objective findings; (2) there was a lack of positive findings regarding the plaintiff's alleged shoulder impairments; and (3) his opinion was limited to whether the plaintiff could do his past work as an electrician. (R. at 21.)

The plaintiff first contends that the ALJ "ignored" Dr. Lehman's December 21 letter. This does not seem to be a reasonable accusation. In a manner quite the opposite of ignoring, the ALJ expressly gave a dense, half-page discussion of the reasons for rejecting it. *Id*. If by "ignore," therefore, the plaintiff simply means "reject," then the plaintiff is correct. It cannot be said, however, that the ALJ failed to explain his view of the letter and its contents in the sense that he somehow acted without a full awareness of it.

The plaintiff also rejects the ALJ's belief that there were no objective findings in support of Dr. Lehman and Stone's disability conclusion. Specifically, the plaintiff points to an MRI of the lumbar spine for low back pain and left leg numbness which substantiate a degenerative disc disease from L3-S I with annular tear at the L4-5 level, as well as disc/osteophyte complex lateral on the left. (See R. at 226.) A follow-up MRI was performed, on September 6, 2006, which showed further degenerative changes indicating at L4-S and LS-S I central disc protrusion, as well as central canal stenosis at L4-S. (See R. at 231.) An MRI of the cervical spine was performed indicating concentric disc space bulge at CS-6 with bilateral neural foraminal compromise slightly more pronounced on the left than the right and a prominent left sided neural foraminal narrowing at C6-C7. *Id*.

This rejoinder fails to meet the ALJ's reasoning in a number of ways. First, the MRI reports say nothing about the want of positive findings regarding the plaintiff's shoulders, which the ALJ notes. Second, the MRI reports fail to absolve the ALJ's concern that the opinion of Dr. Lehman focused largely on the plaintiff's ability to perform his past relevant

6

work as an electrician and not whether there was other work he might be able to perform. Finally, the MRI reports, on their face, do not change the ALJ's observation that the functional limitations ascribed by Dr. Lehman are largely a result of the plaintiff's own subjective description of them as opposed to something derived from the MRI results themselves. As far as the Court has been directed, there is no indication that the MRI reports dictate some degree of specific loss in functionality. Dr. Lehman did not cite such a conclusion anywhere.

The Court may not have viewed Dr. Lehman's opinion in the same way the ALJ did had it considered the matter in the first instance, but there certainly seems substantial evidence to support his position. Most notably, the Court would agree that Dr. Lehman's opinion letter could be reasonably interpreted to pertain to an assessment of the plaintiff's ability to perform work as an electrician. The December 21 letter states that the plaintiff "would be unable to pursue any gainful employment **suitable to his training or experience** at the level of 8 hours daily, 40 hours weekly." (R. at 21-22, 198.) Whether Dr. Lehman actually intended to so limit his opinion and whether the rest of the letter gives reason for a differing interpretation is really of no moment. This plain statement in the letter would have been substantial evidence for the ALJ to view Dr. Lehman's opinion as less than adequate to cover the whole of the disability determination necessary for an administrative determination, including whether other work existed in the national economy which the plaintiff could still perform. To the Court, this reason alone justifies the ALJ's decision to afford little weight to the opinion.

But, the ALJ cited other reasons. Namely, the inconsistency between the disability opinion of Dr. Lehman and the objective findings of Dr. Thomas G. Fleischer, who was an associate, in Dr. Lehman's own practice. Dr. Fleischer noted a negative Spurling's sign (R. at 191); the absence of shoulder weakness or numbness (R. at 191); full shoulder and upper extremity ranges of motion (R. at 190-191); the absence of upper or lower extremity atrophy (R. at 190); symmetrical upper and lower extremity reflexes without deficit (R. at

7

190-191); full hip and lower extremity ranges of motion (R. at 190); the absence of motor deficit (R. at 191); and the absence of sensory deficit (R. at 191). Both Dr. Lehman and Dr. Fleischer concluded that the plaintiff did not have an operative lesion. (R. at 190-191). Dr. Fleischer expressly remarked that it was unclear why the plaintiff was unable to work, and that he should be capable of performing sedentary work. (R. at 190.) The plaintiff has not explained what circumstances changed, from the time of these opinions, that would have led Dr. Lehman to conclude differently. Nor did Dr. Lehman explain the discrepancy. The ALJ, therefore, was entitled to discount the opinion.

Lastly, it was appropriate for the ALJ to diminish the weight given Dr. Lehman's opinion in light of his view that the it was based largely on the subjective descriptions of the symptoms by the plaintiff, himself. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). And, to be clear, the MRIs, while objective, are not necessarily evidence of any resulting functional limitation. As, the ALJ expressly highlighted "all examinations have consistently found the claimant to have full strength in both upper extremities with no atrophy and was described as healthy and strong in appearance." (R. at 21.)

The ALJ was express and thorough in his reasoning. The plaintiff might disagree and cite evidence to the contrary. But, whether or not the plaintiff can produce conflicting evidence which might have resulted in a contrary interpretation of the record is of no effect, so long as other substantial evidence existed in support of the ALJ's decision. *See Blalock*, 483 F.2d at 775; *Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir. 1984) ("[I]t is immaterial that eight medical witnesses disagreed with the ALJ's conclusion, provided that one such witness gave sufficient probative evidence."). As recounted above, it did. The Court, therefore, is constrained to not disturb the decision in regards to Dr. Lehman.

Concerning Dr. Stone's opinion, the ALJ discounted it for lack of objective findings. (R. at 22.) The ALJ noted that Dr. Stone's ultimate disability opinion was inconsistent with his own findings of a supple neck (R. at 199, 201,204, 207, 209, 214, 217-219, 221);

negative straight leg raise testing (R. at 182, 184); and the absence of extremity edema (R. at 199, 201, 204, 214, 217-219).  Also, the results of a lumbar spine MRI he ordered revealed the absence of discrete nerve root encroachment, and only mild central canalstenosis.  (R. at 216.)  The ALJ also found that as a family physician, and not a specialist, Dr. Stone discredited his opinion by overeaching to include depression as a basis for disability when Dr. Stone had never prescirbed any anti-depressant medication or medication for anxiety or any other mental disorder. (R. at 22.)  The plaintiff's only rejoinder is that the consultive psychologist Dr. Aalece O. Pugh-Lily diagnosed the plaintiff with depression.  But, as the ALJ noted, that diagnosis was for "mild" depression only (R. at 196), as compared to depression that is debilitating.[2]

For all of these reasons, the ALJ did not err in concluding that Dr. Stone's opinion was inconsistent with other substantial evidence of record.

## II.     Residual Functional Capacity

The plaintiff summarily contends that the ALJ failed to follow the narrative discussion requirements for assessing a claimant's residual functional capacity ("RFC").  *See* SSR 96-8p.  The plaintiff would suggest that the ALJ's RFC appeared "out of the blue."  (Pl. Brief at 7.)  The Court need not seriously entertain the accusation because the plaintiff has not offered any argument as to how the RFC was actually inaccurate. Accordingly, any procedural error in the ALJ's treatment is harmless.  *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error").  Moreover, the ALJ expressly noted Dr. Fleischer's opinion that the plaintiff could perform "at least" sedentary work.  (R. at 19.)  He also specifically cited the opinions of Drs. Weymouth and Lewis, state agency physicians, that the plaintiff could perform medium work.  (R. at 22.)  The RFC, therefore, was consistent with that recommended by two state

---

[2] It cannot be said, therefore, that the ALJ ignored this evidence as the plaintiff alleges.

agency physicians. (R. at 145-48; 153-56.) In conjunction with the testimony of the plaintiff and the opinions of his treating physicians, to the extent they were credited, the ALJ provided sufficient basis for his RFC. Insofar as the Court has affirmed the ALJ's consideration of the treating physician opinions as proper, *supra*, and the plaintiff's credibility, *infra*, the plaintiff has not given any other basis for assuming that the ALJ's RFC would be any different were he to have been more strictly compliant with the expectations of the regulations. As stated, there is no reason to believe that any error of aesthetic was anything other than harmless. The ALJ recited the applicable law as to RFC. (R. at 17.) He recounted relevant evidence and explained the weight accorded thereto. (R. at 18-22.) And, he was entitled to rely on state agency physician opinions as expert.

### III. THE PLAINTIFF'S CREDIBILITY

The plaintiff next contends that the ALJ failed to properly assess the credibility of his subjective complaints of pain and misapplied the prevailing law.

Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id.* at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ." *Id.* at 593. Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lense because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

The plaintiff admits that the ALJ employed the proper analytical framework but contends that the ALJ did not actually analyze the intensity and persistence of the plaintiff's pain under the second step choosing instead to rotely recount the medical evidence. (Pl. Brief at 9.) The plaintiff, however, mischaracterizes the decision. The Court need not recount it verbatim but the ALJ specifically addresses his bases for discounting the plaintiff's credibility on pages 7 and 8 of the decision, including exaggeration of symptoms, drug-seeking behavior, and inconsistency with objective medical evidence. (R. at 20-21.) The plaintiff does not contest any of the reasons because he claims the ALJ expressed none. In fact, he did. The allegation of error is without merit.

To the extent the plaintiff believes the ALJ somehow *required* objective evidence of pain, he is mistaken. The ALJ did not require it but rightly considered the lack thereof. It is wholly permissible for the ALJ to consider the presence or absence of objective medical evidence at the second step of the analysis. "While objective evidence is not mandatory at the second step of the test, this is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are." *Craig*, 76 F.3d at 595.

There is no legal error in the ALJ's consideration of the plaintiff's credibility. And, the plaintiff has not challenged any of the factual bases for his conclusion in that regard; he contends there were none.

## IV.    DICTIONARY OF OCCUPATIONAL TITLES

The plaintiff lastly complains that the ALJ violated SSR 00-4p when he failed to resolve conflicts between the vocational expert's testimony that the plaintiff could perform certain jobs and the definition of those jobs as described in the Dictionary of Occupational Titles, ("DOT") Revised, U.S. Department of Labor.  Specifically, the VE found that the plaintiff could perform the jobs of storage facility rental clerk, various cashier jobs, and office equipment operator.  (R. at 23, 280-81.)  The plaintiff argues that the ALJ failed to specify the precise DOT numbers for these jobs such that a reviewer could test their consistency with the VE's testimony and, further, that the hypothetical to the VE contained so many limiting factors "away from the exact light or sedentary grid" that a conflict must have been present.  (Pl. Brief at 10.)

Occupational evidence provided by a VE generally should be consistent with the occupational information provided by the DOT.   The ALJ has a duty to ask the VE to identify and explain any conflicts with the DOT.  *See* SSR 00-4p.  The relevant portion of SSR 00-4p reads as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

12

SSR 00-4p. Accordingly, the ALJ must elicit a reasonable explanation for any "apparent unresolved conflict" between the VE evidence and the DOT before relying on the VE to support a determination about whether the claimant can perform any work. *See id.* A VE's conflicting testimony can only be used if the ALJ finds that it is based on "other reliable publications" or the expert's own "experience in job placement or career counseling." SSR 00-4p, 2000 WL 1898704 at *2; *see also Fisher v. Barnhart*, 181 Fed. Appx. 359, 365-66 (4th Cir. 2006) (Unpublished).

As to the plaintiff's suggestion that the ALJ erred in failing to provide specific DOT numbers for the jobs recommended, it is unpersuasive. The regulations do not indicate that the VE or the ALJ are required to provide DOT numbers, but rather that the ALJ may "take administrative notice of reliable job information" such as that information contained in the DOT. *See* 20 C.F.R. §§ 404.1566(d), 416.966(d); *see also Taylor v. Astrue*, 2009 WL 50156, at *12, n.6 (E.D.N.C. January 07, 2009). The Court also notes that counsel attended the administrative hearing and presumably had the opportunity to inquire of the VE as to specific DOT numbers, but declined to do so. (R. 281-83.)

Regarding whether there was any inconsistencies to resolve, the plaintiff has not cited any. He appears to presume them. SSR 00-4p requires the ALJ to resolve only "apparent unresolved conflict[s]." The plaintiff has not specifically explained what conflicts existed, how they were apparent, and how they were left unresolved.

The ALJ and the VE exchanged in a through colloquy. (R. at 277, 279-81.) The ALJ was clear about the limitations of the plaintiff and expressly emphasized that those limitations would rule out a range of sedentary and light jobs. (R. at 279.) The plaintiff has made no effort to explain how these efforts were insufficient to ensure that the VE was sensitive both to the plaintiff's particular RFC and to whether the descriptions of certain jobs in the DOT accommodated that RFC.

13

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

                                                s/BRUCE H. HENDRICKS
                                                UNITED STATES MAGISTRATE JUDGE

October 7, 2009
Greenville, South Carolina