IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Thomas G. Rollins,                              )
                                                )
                      Plaintiff,                )       C.A. No. 8:08-2663-HMH-BHH
                                                )
            vs.                                 )       **OPINION & ORDER**
                                                )
Michael J. Astrue, Commissioner of             )
Social Security,                                )
                                                )
                      Defendant.                )

            This matter is before the court with the Report of United States Magistrate Judge Bruce

Howe Hendricks, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of

the District of South Carolina.[1]  Thomas G. Rollins ("Rollins") seeks judicial review of the

Commissioner of Social Security's ("Commissioner") denial of his applications for disability

insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security

income ("SSI") under Title XVI of the Social Security Act.  In her Report, Magistrate Judge

Hendricks recommends affirming the Commissioner's decision.  For the reasons stated below,

the court affirms the Commissioner's decision.

_____

            [1] The recommendation has no presumptive weight, and the responsibility for making a
final determination remains with the United States District Court.  See Mathews v. Weber, 423
U.S. 261, 270-71 (1976).  The court is charged with making a de novo determination of those
portions of the Report to which specific objection is made.  The court may accept, reject, or
modify, in whole or in part, the recommendation made by the magistrate judge or recommit the
matter with instructions.  See 28 U.S.C. § 636(b)(1).

# I. Factual and Procedural Background

The facts are fully set forth in the decision of the administrative law judge ("ALJ"), (R. at 14-24), and summarized as follows. At the time of the hearing before the ALJ, Rollins was a fifty-two-year-old man with a high school education. (Id. at 23.) His past employment includes work as an unlicensed electrician. Rollins alleges disability due to severe back pain and numbness in his hands, legs, and feet. (Pl. Br. 1.)

On August 16, 2004, Rollins filed applications for DIB and SSI. (R. at 14.) The applications were denied initially and on reconsideration. On April 3, 2008, after a hearing held on January 25, 2008, the ALJ found that Rollins was not disabled. (Id.) On June 14, 2008, the Appeals Council denied Rollins' request for review. (Id. at 3.)

Rollins filed the instant action on July 25, 2008. The Report and Recommendation was entered on October 7, 2009. No objections were filed. Consequently, the court entered judgment in favor of Defendant on November 2, 2009. On November 6, 2009, Plaintiff sought to alter or amend the court's November 2, 2009 Order. The court vacated the November 2, 2009 Order on November 16, 2009, granting Rollins until December 2, 2009, to file objections. Rollins filed objections on November 20, 2009.

## II. The Magistrate Judge's Report

Rollins raised the following issues in his brief:

I. The ALJ erred in failing to honor the treating physician rule.
II. The ALJ erred in failing to set out the rationale for his Residual Functional Capacity ("RFC") finding.
III. The ALJ erred in violating the standard for evaluation of pain.
IV. The ALJ erred in failing to comply with the Social Security Rulings ("SSR") and in failing to cite any Dictionary of Occupational Titles ("DOT").

V.   The ALJ erred in ignoring the records and reports of Dr. William L. Lehman ("Dr. Lehman") and Dr. Sam Stone ("Dr. Stone").

(Pl. Br., generally.)  The magistrate judge concluded that the ALJ's decision was supported by substantial evidence.  (Report and Recommendation, generally.)  Therefore, the magistrate judge recommended affirming the Commissioner's decision.

## III. DISCUSSION OF THE LAW

### A.  Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  In other words, the court "must uphold the factual findings of the Secretary [only] if they are supported by substantial evidence *and* were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (emphasis added).

"Substantial evidence" is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (internal quotation marks omitted).  Hence, if the Commissioner's finding is supported by substantial evidence, the court should uphold the finding even if the court disagrees with it.  See id.  However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

.

3

## B. Objections

Objections to the Report must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Rollins contends that the ALJ erred in failing to (1) acknowledge the treating physician rule, (2) provide his rationale in determining Rollins' RFC, (3) "follow the two-part pain test as set out in Craig", and (4) "comply with [SSR] 00-4p and . . . cite any DOT titles in the Order." (Objections, generally.)

### 1. Treating Physician

The ALJ must afford controlling weight to a treating physician's opinion if it is not inconsistent with substantial evidence in the record and is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2) (2006). In determining the weight given to a treating physician, the ALJ must consider (1) the relationship the patient has with the examining doctor, (2) the length of the treatment relationship, (3) the frequency of the examination, (4) the nature and extent of the treatment relationship, (5) the relevant evidence, (6) the consistency of the physician's opinion with the remainder of the record, and (7) whether the physician is a medical specialist. 20 C.F.R. § 404.1527(d)(2).

Specifically, the ALJ gave "little weight to the opinion of treating physician Dr. Stone [a family physician] who stated in August 2006 that [Rollins] was unable to work due to cervical disc displacement, back pain, depression and osteoarthritis." (R. at 22.) The ALJ explained

> [a]s Dr. Stone is a family physician the undersigned gives more weight to the findings and opinions of Dr. [Thomas] Fleischer [("Dr. Fleischer"), an orthopedist] and Dr. [Mark] Smith [("Dr. Smith"), a neurologist] who are specialists in evaluating and treating spinal disorders. Moreover, Dr. Stone does not provide any objective findings in support of his opinions. He also loses credibility in listing depression as a reason why [Rollins] is not able to work. A review of his treatment notes fail to show that he has ever diagnosed depression or is treating [Rollins] for depression. His notes also do not show that he has ever prescribed any anti-depressant medication or medication for anxiety or any other mental disorder. Nearly all of the examinations included in his notes generally do not contain more than a report of some tenderness in the lumbar area which is more a subjective complaint than an objective finding, and no where [sic] in his notes does he make any comment that [Rollins] appeared depressed. As such, little weight is given to this physician's opinion. Also taken into consideration is the state agency RFC assessment in which [Rollins] was found capable of a full range of medium work.

(Id.) Additionally, the ALJ afforded little weight to the conclusions of Dr. Lehman, an orthopedist. (Id. at 21.) Dr. Lehman examined Rollins in March 2005, less than three months after Dr. Fleischer, and found "no evidence of neurologic deficit and no specific motor, sensory, or reflex deficit. He did note some popping on manipulation of both shoulders with what he described as active impingement, but there was no weakness or numbness." (Id.)

Moreover, Dr. Lehman's "only other positive findings were subjective, such as some complaints of soreness in the elbows but with full range of motion, and tenderness and stiffness on flexion of the spine. X-rays of the shoulders and cervical spine did not reveal significant positive findings." (Id.) "Despite the lack of positive findings Dr. Lehman noted in a

December 21, 2007 letter to [Rollins'] attorney that he did not feel that [Rollins] was able to 'pursue any gainful employment suitable to his training and experience . . . .'" (R. at 21.) The ALJ, therefore, explained that he afforded

> little weight to [Dr. Lehman's] opinion as to the limitations he imposed or his conclusion that [Rollins] was disabled for several reasons. First, his conclusions appear to be based upon [Rollins'] complaints rather than positive objective findings, as his findings were not all that different than those of orthopedist, Dr. Fleischer or neurologist Dr. Smith, and neither Dr. Fleischer nor Dr. Smith made any statements that [Rollins] could not work. . . . Second, neither Dr. Smith nor Dr. Fleischer found any positive findings regarding [Rollins'] shoulders. Dr. Smith noted that [Rollins] had a full shoulder shrug and Dr. Fleischer found full range of motion of both shoulders, and neither physician diagnosed impingement syndrome or indicated that [Rollins] had any difficulty raising his arms or using his upper extremities.

(R. at 21.) Rollins objects that both Dr. Stone and Dr. Lehman's medical opinions were supported by objective tests and should be afforded greater weight. (Objections 3.) The court has reviewed the record and finds that the ALJ's decision not to grant Dr. Stone and Dr. Lehman's opinions controlling weight is supported by substantial evidence.

The ALJ provided a detailed summary of the reasons he declined to afford Dr. Scott and Dr. Lehman's opinions controlling weight. Following Rollins' visit with Dr. Fleischer in December 2004, Dr. Fleischer wrote, "[Rollins] has had a thorough evaluation. He does not have an operative lesion and it's unclear to me why [Rollins] is unable to work. I think he should be perfectly capable of at least sedentary work." (R. at 190.) Additionally, Dr. Fleischer noted that Rollins was healthy and strong, with full range of motion in his extremities despite Rollins' allegation that he suffered pain in "every joint in his body except his hands and fingers." (Id.) Similarly, Dr. Smith evaluated Rollins on October 6, 2005, and noted that Rollins' "[m]otor strength is 5/5 throughout all extremities. He is able to walk on his toes and heels without

difficulty. Muscle tone and bulk are normal throughout." (Id. at 234.) Moreover, as the ALJ explained, Dr. Smith's opinion received greater weight because he is a specialist in evaluating spinal disorders. See 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Based on the foregoing, this objection is without merit.

### 2. Rollins' RFC

Next, Rollins objects that the ALJ failed to provide an adequate explanation of his rationale in determining his RFC. (Objections 7-8.) The ALJ determined that Rollins has the RFC to "perform light and sedentary work in jobs that permit Rollins to sit and stand as needed, with no repetitive bending, stooping, squatting, climbing or balancing, no work around hazardous machinery or at unprotected heights, and due to pain no jobs that require sustained concentration." (R. at 17.) According to Rollins, while the ALJ's RFC discussion was "rather detailed . . . he did not provide any rationale for it whatsoever." (Objections 7.) The court finds that the ALJ's RFC assessment is supported by substantial evidence.

An RFC "is the most [a claimant] can still do despite [his] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). In his assessment, the ALJ discussed and considered the medical conclusions of Rollins' treating and reviewing physicians, Rollins' subjective complaints, and RFC assessments of Dr. Richard Weymouth ("Dr. Weymouth") and Dr. Joyce Lewis ("Dr. Lewis"). (R. at 16-22.)

Dr. Weymouth, a medical consultant, concluded on January 6, 2005, that Rollins possessed the RFC to lift fifty pounds occasionally and twenty-five pounds frequently. (Id. at

145.) Dr. Weymouth also concluded that Rollins could sit, stand, and walk "about 6 hours in an 8-hour workday," and push and pull without limitations. (Id.) Further, Dr. Weymouth found that Rollins had no manipulative, postural, communicative, environmental, or manipulative limitations. (Id. at 146-47.) Ultimately, Dr. Weymouth concluded that "objective evidence indicates [Rollins] can do medium exertional work." (Id. at 149.)

On October 18, 2005, Dr. Lewis, a medical consultant, also concluded that Rollins could lift fifty pounds occasionally and twenty-five pounds frequently. (Id. at 153.) Dr. Lewis found that Rollins could sit for a total "6 hours in an 8-hour workday"; maintained an unlimited ability to push and pull, could balance, stoop, kneel, crouch, and crawl frequently; and was unlimited in his ability to handle, finger, and feel. (R. at 153.) Like Dr. Weymouth, Dr. Lewis also found that Rollins exhibited no visual, communicative, or environmental limitations.

"Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources . . . ." SSR 96-6p, 1996 WL 374180, at *1 (1996). "State agency medical and psychological consultants are highly qualified physicians . . . who are experts in the evaluation of the medical issues in disability claims under the Act. . . . [T]hey consider the medical evidence in disability cases and make findings of fact on the medical issues, including . . . [an] individual's [RFC]." Id. at *2.

While the ALJ did not discuss the specific findings of Drs. Weymouth and Lewis in his RFC assessment, his conclusions are plainly based, in part, on their conclusions. (R. at 22 ("Also taken into consideration is the state agency RFC assessment in which [Rollins] was found

capable of a full range of medium work.").)  The ALJ concluded that Rollins has the RFC to perform light and sedentary work, with certain limitations.

"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  § 404.1567(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  Id.  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  § 404.1567(a).

Upon review, the court finds that although the ALJ's RFC assessment is supported by substantial evidence, any error in the detail of the ALJ's "explanatory rationale" is harmless error.  The ALJ discussed in great detail the medical conclusions of each physician who examined Rollins.  Multiple physicians noted Rollins' overall good condition and Dr. Fleischer concluded that it was unclear why Rollins was unable to work.  (R. at 19.)   Moreover, Rollins does not argue that the RFC is incorrect, rather that the ALJ failed to provide an "explanatory rationale" for the RFC.  (Objections 8.)

### 3.  Rollins' Credibility

Rollins also objects that the ALJ failed to properly assess his credibility regarding his subjective complaints of pain.  In particular, Rollins alleges that the ALJ "failed to follow the two-part test as set out in Craig."  (Objections 9.)  "[T]he determination of whether a person is

disabled by pain or other symptoms is a two-step process." <u>Craig</u>, 76 F.3d at 594. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*." <u>Id.</u> In order "for pain to be found to be disabling, there *must* be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges [he] suffers*." <u>Id.</u> "It is only *after* a claimant has met [his] threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work, must be evaluated." <u>Id.</u> at 595.

The ALJ found that Rollins'

> determinable impairments could reasonably be expected to produce the
> alleged symptoms, but [Rollins'] statements concerning the intensity,
> persistence and limiting effects of these symptoms are not entirely credible.
> The evidence of record shows that [Rollins] has a long history of back
> complaints. However, intertwined in the record of these complaints and
> record of treatment is the recurrent theme of abuse of prescription pain
> medication.

(R. at 20.) Rollins indicated that

> [h]e has pain in his low[er] back and pain and numbness in his legs. The pain is
> constant. He also feels the pain in his low[er] back and pain and numbness in his
> legs. The pain is constant. He also feels the pain in his stomach and his testicles.
> The pain has been so bad that he has become sick to his stomach. He also has pain
> in his shoulders and has problems raising his arms over his head. He has pain while
> sleeping and when riding in a car. . . . He has difficulty concentrating and he has
> migraines 2-3 times per month that last up to three days. . . . He denied any
> problems with drugs or alcohol.

10

(Id. at 18.)  The ALJ found that Rollins' statements were not entirely credible because the evidence in the record suggests that Rollins has a history of dependence on medication and the great weight of the medical evidence contradicts Rollins' allegations.

"A claimant's misuse of medications is a valid factor in an ALJ's credibility determinations."  Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003).  As the ALJ noted, Dr. Aalece Pugh-Lilly ("Dr. Pugh-Lilly"), a medical consultant, noted that while Rollins "adamantly denied that he has developed a dependence to pain medications and other substances," his history suggests otherwise.  (R. at 19.)  Dr. Pugh-Lilly also noted that Rollins "had been on some type of daily pain medication for the past eight years, that he typically runs low on the medication toward the end of the month at which time he consumes heavier amounts of alcohol."  (Id. at 20.)  Moreover, Rollins "reported that for a period of two years he was using the Morphine prescribed for his friend's terminally ill wife and he also admitted to undergoing rehab for substance addiction."  (Id.)  However, during his hearing, Rollins denied any form of drug addiction.  The ALJ noted that "the record contains other instances in which [Rollins] requested refills of Oxycontin before it was due or wanted his dosage increased.  While the reason for these requests could certainly be due to severe pain, the lack of positive findings on most examinations suggests that it was more likely due to drug seeking behavior."  (Id. at 20-21.)

Additionally, Rollins' allegations of pain "need not be accepted to the extent that they are inconsistent with the available evidence . . . ."  Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006).  The ALJ noted, for example, that

> when [Rollins] was examined by orthopedist Dr. Fleischer in February 2004 he complained of constant pain in every joint in his body except his hands and fingers.  However, Dr. Fleischer's examination was essentially normal with the

exception of some range of motion movements that [Rollins] refused to do. However, Dr. Fleischer noted that while [Rollins] would not flex at the waist past 20 degrees during range of motion testing, he easily moved from a standing to a sitting position.

(Id. at 21.) "Moreover, all examinations have consistently found [Rollins] to have full strength in both upper extremities with no atrophy and was described as healthy and strong in appearance." (Id.)

Rollins objects that "the ALJ has not used anything other than medical evidence to reject [his] complaints of pain." (Objections 9.) However, as discussed above, the ALJ considered Rollins' likelihood of drug abuse as well as the objective medical evidence in determining Rollins' credibility. "[O]bjective medical evidence and other objective evidence are . . . crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. "Although a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence . . . ." Id. The ALJ's conclusion that Rollins' statements regarding the intensity, persistence, and limiting affects of his symptoms were not entirely credible is supported by substantial evidence. As such, Rollins' objection is without merit.

### 4. Social Security Ruling 00-4p and Dictionary of Titles

Lastly, Rollins argues that the

ALJ did not cite any DOT numbers in his order, so it is impossible for a reviewer to know whether or not the ALJ's decision is accurate. Second, the ALJ hypothetical includes so many limiting factors away from the . . . light or sedentary grid that it is obvious that the vocational expert [("VE")] needed to be asked the specific question as to whether or not his hypothetical conflicted with the [DOT].

(Pl. Br. 10.)  This objection is without merit.  Based on Rollins' RFC, the ALJ questioned the

VE as to whether a hypothetical person with Rollins' limitations could perform any work

existing in the national economy.  (R. at 279-80.)  The VE testified that Rollins would be able to

work as a storage facility rental clerk, cashier, or office equipment operator.  (Id. at 280-81.)

Rollins objects to the ALJ's failure to provide any DOT references in his decision.  However, the

ALJ is not required to provide references to the DOT.  The ALJ must discuss the DOT "[w]hen

there is an apparent unresolved conflict between VE . . . evidence and the DOT."  SSR 00-4p,

2000 WL 1898704 at *2.  Rollins does not allege any specific apparent unresolved conflicts

between the VE's findings and sections of the DOT.  Moreover, the job requirements for a

storage facility rental clerk (DICOT 295.367-026), cashier (DICOT 211.362-010), and office

equipment operator (DICOT 239.567-010)[2] are consistent with the limitations described by the

ALJ.  Therefore, the court finds that Rollins' objection is without merit.

Based on the foregoing, the court adopts Magistrate Judge Hendrick's Report and

Recommendation.

---

[2]  The term "office equipment operator" is not found within the DOT, however, the VE explained that this job entails activities such as "photo copying, sorting, collating" which is similar to an office helper.  (R. at 281.)

It is therefore

**ORDERED** that the decision of the Commissioner is affirmed.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
December 21, 2009